UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re: ) | |
| ) | MDL Docket No. 1798 |
| LONG-DISTANCE TELEPHONE SERVICE ) | |
| FEDERAL EXCISE TAX REFUND ) | Master File: 07-mc-0014 (RMU) |
| LITIGATION ) | |
| ) | Member Case: 07-cv-051 |
| This Document Relates To: ) | |
| *Cohen v. United States* ) | |

**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COHEN'S APA CLAIM**

Plaintiff's opposition brief does not overcome any of our grounds for dismissal. The Court should dismiss Plaintiff's APA claim for lack of standing, commitment of action to agency discretion, sovereign immunity, and lack of final agency action.

**I. Plaintiff lacks standing to assert his APA claim.**

Plaintiff's argument that he has suffered an injury-in-fact sufficient to confer standing under Article III and the APA runs essentially as follows:

1) The Notice procedure requires Plaintiff to withdraw the refund claim he previously filed with the IRS in order to receive a lesser amount using the Notice procedure;

2) Therefore, Plaintiff suffers harm from being unable to make duplicative refund requests – once through a refund claim (now in litigation), and again through the Notice procedure; and

3) Therefore, Plaintiff need not submit a request through the Notice procedure in order to challenge any of its terms and conditions under his second claim for relief (the APA claim), because to do so would force him to abandon his first claim for relief (the refund claim).

1

This argument suffers from numerous faults. First, the initial premise is technically correct but nevertheless misleading as to the infliction of any harm. Notice 2006-50 does not condition receipt of payment through the Notice procedure on the withdrawal of prior TET refund claims made to the IRS (like Plaintiff's refund claim). Rather, Notice 2006-50 conditions Notice-procedure payments on the withdrawal of prior requests made to telecommunications service providers, the collectors of the excise tax.[1] Plaintiff has never alleged that he made a request to a service provider. Similarly, Notice 2007-11 does not condition a taxpayer's ability to request, through the Notice procedure, a refund of the actual amount of TET paid on the withdrawal of prior TET refund claims made to the IRS. Rather, that Notice conditions actual-amount requests on withdrawal of prior requests made to service providers and does not allow standard-amount (safe harbor) requests if the taxpayer has filed any other TET refund claim or request with the IRS for the relevant period.[2]

But this last condition does no harm to Plaintiff because he has expressed no intention or desire to claim a safe harbor amount ($30) that, in his case, is little more than half the amount of tax he is allegedly due. So the withdrawal requirement is no imposition on him. Of course, Plaintiff glosses over the fact that he is free to request the actual amount of tax through the Notice procedure. He is under no obligation to claim the lesser safe harbor amount. The IRS is not "unlawfully proposing to make him sacrifice part of his legal entitlement to get some of the

---

[1] IRS Notice 2006-50, 2006-25 I.R.B. 1141, 2006 WL 1452787, §§ 2(a)(3), 5(a)(3), 5(c)(1)(i) (May 26, 2006); *see also* Van Hoey Decl. (Doc. No. 14, Case No. 07-mc-14 (D.D.C.)), Ex. A at 5 of 5; Ex. B at 2, 4 of 5; Ex. C at 2, 4 of 7.

[2] IRS Notice 2007-11, 2007-5 I.R.B. 405, 2006 WL 3803129, § 3(a) (Dec. 28, 2006).

money back."[3]

Second, the inability to file duplicative refund requests cannot be an injury for standing purposes. Plaintiff recognizes that an injury-in-fact must be an actual or imminent invasion of a legally protected interest.[4] Yet taxpayers cannot possibly have a legally protected interest to receive duplicative refunds, so they cannot possibly have a legally protected interest to request duplicative refunds. Thus, *Banner* is inapposite because we do not claim that Plaintiff's grievance is generalized and undifferentiated.[5] We maintain that he has no grievance at all.

Third, and finally, even assuming *arguendo* that the claim-withdrawal requirement could be an injury, that injury would not grant Plaintiff standing to challenge other terms and conditions of the Notice procedure (e.g., the safe harbor levels, the requirement of filing a tax form to receive a payment, or the length of the relevant period). That injury would allow him to challenge the withdrawal requirement that caused it and that could be redressed by the Court through the elimination of that requirement. It would not grant him *carte blanche* to attack totally unrelated requirements, like the requirement that Notice-procedure requests be made on tax forms.[6]

---

[3] Neiland Cohen's Brief in Opposition to the Government's Motion to Dismiss Cohen's Claim Under the Administrative Procedure Act (Pl.'s Opp. Br.) (Doc. No. 16, Case No. 07-mc-14 (D.D.C.)) at 3.

[4] *Id.* at 2.

[5] *Id.* at 3 (discussing *Banner v. United States*, 303 F. Supp. 2d 1, 7-8 (D.D.C. 2004), *aff'd*, 428 F.3d 303 (D.C. Cir. 2005)).

[6] *Cf.* Pl.'s Opp. Br. at 4 (failing to recognize this fact).

3

**II. Even assuming that the Notice procedure is agency action, it is nevertheless committed to agency discretion by law.**

Though the agency-discretion exception to judicial review in 5 U.S.C. § 701(a)(2) is narrow, the D.C. Circuit does not hesitate to apply it in appropriate circumstances.[7] This case is such a circumstance. There is no law or standard for the Court to apply in reviewing the terms of the Notice procedure.

Plaintiff's argument that I.R.C. § 6402(a) not only limited the IRS's discretion to set the terms of the Notice procedure but in fact eliminated that discretion entirely is incorrect, for two reasons.[8] First, contrary to Plaintiff's assertion, § 6402(a) does not provide the statutory authority for the Notice procedure, and the statute that does so (I.R.C. § 7122(a)) does not confine the Service's discretion to make offers like the Notice procedure. Second, § 6402(a) does not prevent the IRS from choosing the terms upon which it makes such offers.

      A. Section 7122(a) provides discretionary authority for the Notice procedure.

Plaintiff believes that § 6402(a) is the statutory authority for the Notice procedure and therefore that the IRS had no discretion to issue Notice 2006-50 because of the statute's

---

[7] *See, e.g., Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 152 (D.C. Cir. 2006); *Steenholdt v. FAA*, 314 F.3d 633, 634, 638 (D.C. Cir. 2003); *Drake v. FAA*, 291 F.3d 59, 62 (D.C. Cir. 2002); *Baltimore Gas & Elec. Co. v. FERC*, 252 F.3d 456, 457 (D.C. Cir. 2001); *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997).

[8] Pl.'s Opp. Br. at 7. Section 6402(a) states: "In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), and (e) refund any balance to such person."

mandatory language.[9]  But Plaintiff's premise is incorrect.  As we have previously stated,[10] the Notice procedure is an *offer* by the IRS to the effect that *if* a taxpayer follows the terms of the Notice procedure in requesting a TET refund, *then* the Service will make the payment described in the Notice.[11]  Therefore, the Service's authority to offer the Notice procedure is found in I.R.C. § 7122(a), which states that "[t]he Secretary may compromise any civil or criminal case arising under the internal revenue laws prior to reference to the Department of Justice for prosecution or defense."[12]  Essentially, Notice 2006-50 is an offer by the IRS to compromise its potential liability for any potential TET overpayments by paying taxpayers who request refunds through the Notice procedure either the exact amount of tax they paid or a standard (safe harbor) amount.  Because the Notice is only an offer, taxpayers are under no obligation to accept it, and their rights and remedies under the existing legal framework for resolving tax refund claims are unaffected.

---

[9] Pl.'s Opp. Br. at 8 & n.3.

[10] *See* United States' Memorandum in Support of Motion to Dismiss Cohen's APA Claim (Def.'s APA Dismissal Br.) (Doc. No. 14, Case No. 07-mc-14 (D.D.C.)) at 2-3, 8, 10, 13, 16; Memorandum in Support of United States' Motion to Dismiss Second Amended Complaint (Doc. No. 29-2, *Sloan v. United States*, Case No. 06-cv-483 (D.D.C.)) at 5; Reply Memorandum in Support of United States' Motion to Dismiss Second Amended Complaint (Doc. No. 38-1, Case No. 06-cv-483 (D.D.C.)) at 12.

[11] *See* Notice 2006-50, § 5(a)(1) ("The Commissioner agrees to credit or refund the amounts paid for nontaxable service if the taxpayer requests the credit or refund in the manner prescribed in this notice.").

[12] To the extent we previously suggested, in a different context in *Gurrola v. United States* (Case No. 07-cv-50 (D.D.C.)), that I.R.C. § 7805(a) provided the authority for the Notice procedure, we now clarify (for purposes of all cases in MDL No. 1798) that I.R.C. § 7122(a) provides the authority for the Notice procedure.  *See* Memorandum of Points and Authorities in Support of Defendant United States of America's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. No. 45, *Gurrola v. United States*, Case No. 06-cv-3425 (C.D. Cal.)) at 15-16.

Furthermore, just as with the statutes governing tax refund claims,[13] § 7122(a) does not place any limit on the Service's discretion to make compromise offers on its own terms. The permissive language of this statute makes plain that the IRS has discretion both to make offers on terms of its choosing and to accept or reject offers made by taxpayers on terms of their choosing.[14] And while Congress may have contemplated certain limits on the IRS's discretion in considering, accepting, and rejecting offers made by taxpayers,[15] those limits by their terms do not apply to the Service's discretion to make offers of its own.

Similarly, the applicable Treasury Regulation under § 7122(a) states that "[i]f the Secretary determines that there are grounds for compromise under this section, the Secretary may, at the Secretary's discretion, compromise any civil or criminal liability arising under the internal revenue laws prior to reference of a case involving such a liability to the Department of Justice for prosecution or defense."[16] The regulation expressly recognizes the discretionary nature of the agency's settlement authority.[17] Furthermore, it "limits" the discretion to make a compromise offer only in the loose sense of requiring a subjective determination that a ground

---

[13] Def.'s APA Dismissal Br. at 10-12.

[14] *See 1900 M Restaurant Assocs. v. United States (In re 1900 M Restaurant Assocs.)*, 352 B.R. 1, 8 (D.D.C. 2006) ("By using the word 'may' [in I.R.C. § 7122(a)], Congress vested discretion in the Secretary. . . .").

[15] *See* I.R.C. § 7122(d)-(f).

[16] Treas. Reg. § 301.7122-1(a)(1).

[17] *See also Baltimore Gas*, 252 F.3d at 459, 461 (presumptive unreviewability of settlement decisions confirmed by precatory language in statute).

for compromise exists.[18]  As the D.C. Circuit has found, the presence of such subjective standards does not provide courts with law to apply to APA claims, and therefore does not preclude application of the agency-discretion exception in 5 U.S.C. § 701(a)(2).[19]  Neither does any other portion of that regulation limit the Service's discretion to make compromise offers and to determine their terms.[20]  Therefore, the IRS has virtually unlimited discretion to make compromise offers like Notice 2006-50 on terms of its choosing, and consequently there is no legal standard on which a court could review that decision under the APA.

### B.  Section 6402(a) does not affect the IRS's discretion to make offers.

Section 6402(a) does not limit – much less eliminate – the discretion of the IRS under § 7122(a) to make offers to compromise potential overpayment liabilities.  If Congress had intended such a limitation, it could have expressly provided one in the text of either statute.  But neither statute so much as mentions the other.  Nor does § 6402(a) place any limitation on the IRS's discretion to determine the terms of an offer under § 7122(a).  Nothing in § 6402(a) says or even implies that the IRS lacks discretion, for example, to require the filing of a certain form

---

[18] *See* Treas. Reg. § 301.7122-1(b) (grounds for compromise).  The applicable ground for compromise here is "doubt as to liability," based on the outcomes of the TET refund cases referenced in Notice 2006-50, §§ 1(a), 2(e), 4(a).  *See* Treas. Reg. § 301.7122-1(b)(1).

[19] *See Drake*, 291 F.3d at 71-72 (statute permitting FAA to dismiss complaint without hearing if official was subjectively "of the opinion" that complaint did not warrant investigation gave agency "virtually unfettered discretion" and did not provide standard for judicial review).

[20] *See also* Treas. Reg. § 301.7122-1(c)(1) ("Once a basis for compromise under paragraph (b) of this section has been identified, the decision to accept or reject an offer to compromise, as well as the terms and conditions agreed to, is left to the discretion of the Secretary.  The determination whether to accept or reject an offer to compromise will be based upon consideration of all the facts and circumstances, including whether the circumstances of a particular case warrant acceptance of an amount that might not otherwise be acceptable under the Secretary's policies and procedures.").

with the IRS to accept an IRS offer, or to offer safe harbor amounts to taxpayers.

Plaintiff claims to believe that the terms of the Notice procedure amount to "gross unfairness, material insufficiency, and arbitrary or illegitimate conditions,"[21] and other taxpayers may claim likewise. If so, they may simply reject the offer by not using the Notice procedure and claiming their refunds through the traditional statutory process. But Plaintiff's claimed belief that the offer's terms and conditions are insufficient and unfair does not alter the fact that the IRS has virtually unlimited discretion to determine what terms it shall offer in the first place. Nor do the cases cited by Plaintiff limit the IRS's discretion,[22] for Plaintiff cites no authority holding that common law may supply the requisite standard for purposes of APA review, and we have previously distinguished Plaintiff's cases in any event.[23]

Finally, we note that the Notice procedure will not result in the IRS returning "some fraction of the overpayment that the government finds it convenient to disburse," as Plaintiff alleges.[24] Taxpayers may use the Notice procedure to request a refund of the exact amount of tax they paid over the relevant period, just as they could do under existing law with a traditional refund claim or refund suit. Far from being an indication of "gross unfairness," the fact that the

---

[21] Pl.'s Opp. Br. at 9.

[22] *Id.* at 9-10.

[23] United States' Sur Reply Brief in Opposition to Plaintiff's Motion for Class Certification (Doc. No. 62, *Cohen v. United States*, Case No. 05-cv-1237 (E.D. Wis.)) at 9-10 & n.31. Similarly, Plaintiff fails to present any evidence that a certain quote in an IRS press release (which Plaintiff actually misquotes and erroneously attributes to the entire Notice procedure, rather than the standard amounts) rises to the level of a "binding norm" sufficient to allow APA review of the entire Notice procedure. Pl.'s Opp. Br. at 10 & Ex. A; *see Steenholdt*, 314 F.3d at 638.

[24] Pl.'s Opp. Br. at 10.

Notice procedure tracks existing law by requiring substantiation of exact-amount requests is instead evidence of the procedure's reasonableness and legality.

### III. The sovereign immunity waiver in 5 U.S.C. § 702 does not apply to the principal relief sought by Plaintiff, and therefore the relief is barred.

Plaintiff's claim that his request for a "class remedy" that will "maximize restitution of funds" is not, in substance, a class-action refund request, is not credible.[25] Apparently asking the Court to establish a class-action remedy to pay millions of individual refund claims is not "directed . . . to payment of individual refund claims," though "it would have monetary consequences."[26] Our point is simply that if Plaintiff is jurisdictionally barred from obtaining a class-wide refund via his first claim for relief (the refund suit under I.R.C. § 7422(a)), then, according to 5 U.S.C. § 702, he may not use the APA's sovereign immunity waiver to obtain essentially the same relief under the guise of his second claim for relief (the APA claim).

### IV. Plaintiff has failed to state an APA claim because the Notice procedure is not a final agency action for which there is no other adequate remedy.

Plaintiff has not stated a proper APA claim under 5 U.S.C. § 704 because (1) he has not alleged that no other remedy exists for the Notice procedure and, more importantly, (2) no legal consequences are in fact determined by the Notice procedure alone. Paragraph 33 of the second amended complaint is addressed to Plaintiff's request for class certification and says nothing about the Notice procedure or remedies for it.[27] Paragraph 29 alleges the consequences of not

---

[25] *Id.* at 11.

[26] *Id.*

[27] Second Amended Complaint for Injunctive, Declaratory, and Monetary Relief, and Request for Class Certification (Doc. No. 83, *Cohen v. United States*, Case No. 05-cv-1237 (E.D. Wis.)) ¶ 33.

correcting perceived deficiencies in the Notice procedure, but says nothing about alternate remedies being inadequate.[28] Thus, Plaintiff's allegations are deficient.

Furthermore, given that the Notice procedure is merely an offer, it does not by itself generate any legal consequences. Taxpayers are under no obligation to accept the offer, and it does not disturb any aspect of the federal tax law regime governing refund claims and refund suits. Allegations that the offer is deficient, that it cannot now be changed, and that it might somehow ("upon information and belief") affect judicial consideration of this case,[29] do not affect the analysis. The nature of the Notice procedure as an offer, which may be voluntarily accepted or declined, is the same in any event. Therefore, Plaintiff has failed to state a proper APA claim, and the Court should dismiss it for any of the reasons discussed above.

JEFFREY A. TAYLOR
United States Attorney


 /s/ Gregory E. Van Hoey
GREGORY E. VAN HOEY
Maryland Bar
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-6391
Facsimile: (202) 514-6770
E-mail: gregory.van.hoey@usdoj.gov

---

[28] *Id.* ¶ 29.

[29] *Id.* ¶¶ 27-29.

**Certificate of Service**

I hereby certify that on March 12, 2007, I electronically filed the United States' Reply Memorandum in Support of Motion to Dismiss Cohen's APA Claim with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| Sidney A. Backstrom<br>Scruggs Law Firm, PA<br>120A Courthouse Square<br>P.O. Box 1136<br>Oxford, MS 38655 | Steven N. Berk<br>Cuneo Gilbert & LaDuca, LLP<br>507 C Street NE<br>Washington, DC 20002 |
| Michael A. Bowen<br>Foley & Lardner LLP<br>777 East Wisconsin Avenue<br>Milwaukee, WI 53202 | Nicholas E. Chimicles<br>Chimicles & Tikellis LLP<br>361 West Lancaster Avenue<br>Haverford, PA 19041 |
| Jonathan Watson Cuneo<br>Cuneo Gilbert & LaDuca LLP<br>507 C Street NE<br>Washington, DC 20002 | Robert J. Cynkar<br>Cuneo Gilbert & LaDuca LLP<br>507 C Street NE<br>Washington, DC 20002 |
| Ivan C. Dale<br>U.S. Department of Justice, Tax Division<br>P.O. Box 227<br>Washington, DC 20044 | Benjamin F. Johns<br>Chimicles & Tikellis LLP<br>361 West Lancaster Avenue<br>Haverford, PA 19041 |
| Charles J. LaDuca<br>Cuneo Gilbert & LaDuca LLP<br>507 C Street NE<br>Washington, DC 20002 | Robert G. Smith<br>Lewis Brisbois Bisgaard & Smith LLP<br>550 West C Street, Suite 800<br>San Diego, CA 92101 |

I further certify that on that same date I served the foregoing document on the following by United States mail, postage prepaid:

| | |
|---|---|
| Daniel Paul Collins<br>Daniel L. Geyser<br>Burton A. Gross<br>Joseph D. Lee<br>Munger, Tolles & Olson LLP<br>355 South Grand Avenue, 35th Floor<br>Los Angeles, CA 90071 | Richard Henry Dolan<br>Schlam Stone & Dolan LLP<br>26 Broadway<br>New York, NY 10004 |
| John P. Frantz<br>One Verizon Way<br>VC54N067<br>Basking Ridge, NJ 07920 | Michael D. Leffel<br>Foley & Lardner LLP<br>150 East Gilman Street<br>Madison, WI 53703 |
| Alejandro Mayorkas<br>Sandra Sepulveda<br>O'Melveny & Myers LLP<br>400 South Hope Street<br>Los Angeles CA 90071 | Christopher R. Neufeld<br>Kelechi O. Onyeobia<br>Law Offices of Kelechi O. Onyeobia, P.C.<br>1218 Walton Avenue, Suite 108<br>Bronx, NY 10452 |
| Kevin T. Peters<br>Christopher Weld, Jr.<br>Tony & Weld LLP<br>28 State Street<br>Boston, MA 02109 | Richard F. Scruggs<br>Scruggs Law Firm, PA<br>120A Courthouse Square<br>P.O. Box 1136<br>Oxford, MS 38655 |
| P. Scott Wolleson<br>The Boles Law Firm<br>P.O. Box 2065<br>Monroe, LA 71207 | |

  /s/ Gregory E. Van Hoey
GREGORY E. VAN HOEY
Maryland Bar
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 307-6391
Facsimile: (202) 514-6770
E-mail: gregory.van.hoey@usdoj.gov