**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | : | MDL No. 1798 |
| IN RE: LONG-DISTANCE TELEPHONE | : | |
| SERVICE FEDERAL EXCISE TAX | : | Judge Ricardo M. Urbina |
| REFUND LITIGATION | : | |
| | : | Docket No. 1:07-mc-00014-RMU |
| | : | |

## NOTICE AND SUBMISSION OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully submit for the Court's consideration the attached report,

just released by the United States Government Accountability Office ("GAO"), TAX

ADMINISTRATION: TELEPHONE EXCISE TAX REFUND REQUESTS ARE FEWER THAN

PROJECTED AND HAVE HAD MINIMAL IMPACT ON IRS SERVICES, No. GAO-07-695 (April

11, 2007) ("GAO REPORT").[1] This GAO REPORT is directly relevant to the interests of

the plaintiffs and the proposed class, from whom the Federal Telephone Excise Tax

("FET") has been illegally exacted. The GAO REPORT is also relevant to the

management and posture of this litigation.

Plaintiffs brought this action to halt the illegal exaction of the FET from a class of

individuals and small entities, including those who could least afford to pay this tax: the

millions of individuals who do not have to file an income tax return. Under well-

established principles of law that protect citizens from such illegal exactions, plaintiffs

seek the return of the money illegally taken, along with interest. As the Court has been

advised, the Government has formally (and now some time ago) conceded that the

collection of the FET was illegal. *See* IRS Notice 2006-50, May 25, 2006.

---

[1] This Report is also available at www.gao.gov/cgi-bin/getpt?GAO-07-695.

Plaintiffs have also maintained that the return of this money poses practical difficulties. A perfect remedy is probably beyond reach, but a reasonably just (and legally permissible) remedy can be devised, and we have consistently stated our willingness to work with the Government to achieve such a fair resolution of this case.

Notwithstanding the now-conceded liability of the Government for this illegal exaction, the Government has to date rebuffed plaintiffs' efforts to remedy its wrongdoing. Instead, it has sought to dismiss this case on jurisdictional grounds, and adopted a position that it need return only three years' worth of the money it has exacted (instead of the more than six years' worth of illegal exactions). Neither its jurisdictional claim, nor the Government's limitation on its duty to make its victims whole, has merit.

In addition, the Internal Revenue Service ("IRS") fashioned a mechanism to use the regular income-tax collection process to allow individuals to request a refund of the illegally exacted FET, again limited to the three-year window of exactions. Shortly after this step was announced, plaintiffs pointed out to the Court the serious deficiencies of this mechanism for providing the relief to which plaintiffs and the proposed class are entitled. *See* Plaintiffs' Motion for Preliminary Injunction, filed July 6, 2006, (Dkt. 25); *see also* Robert Greenstein, "Repaying an Invalid Excise Tax to Low-Income Households that Do Not File Income Tax Returns" (August 3, 2006) (Dkt. 32 - Ex. 1). Foremost among plaintiffs' concerns (besides our objection to the unlawful limit on the amount of money to be returned) was the unlikelihood that using the IRS Form 1040 for this refund as the Government planned would be effective, especially with respect to the millions of victims who are not otherwise required to file that Form. The GAO REPORT has now confirmed these concerns.

The GAO found that only 1.7 percent of 10 to 30 million individuals without a tax-filing obligation sought a FET refund. GAO REPORT, Appendix I, at 10. Similarly, only 1.7 percent of 11 million small businesses (C-corporations, S-corporations, and partnerships) sought a refund. *Id.* The performance of this mechanism for tax-exempt entities (such as charitable and non-profit organizations) was even worse – *not one requested a refund. Id.* The GAO provided the following helpful table that summarizes its findings:



## Number of Individuals and Entities Affected by Tax System Changes

TETR could be the most far-reaching refund in IRS history—a projected 159 to 181 million (M) individuals and entities may request the refund

| Eligible TETR filers | | Projected number of filers | Total number of filers to date | Number of TETR requests | Percentage |
|---|---|---|---|---|---|
| Individuals[b] | Tax return filers[a] | 135 M | 69.1 M | 47.3 M | 68.5 percent of actual filers |
| | Individuals without a tax filing obligation | 10-30 M | 334,054 | 332,963[c] | 1.7 percent[d] of projected filers |
| Entities[e] | Businesses (C-Corporations, S-Corporations, and partnerships) | 11 M | Not available | 189,510 | 1.7 percent of projected filers |
| | Tax-exempt filers | 1.3 M | Not available | 280 | 0.0 percent of projected filers |
| | State, local government, and other non-filers | 2-4 M | Not available | Not available | Not available |
| | Total | 159 – 181 M | Not available | Not available | Not available |

Source: GAO analysis of IRS data.
[a]Includes 1040 series forms: 1040, 1040A, 1040EZ, and 1040NR.
[b]Data for the week ending January 20, 2007 through the week ending March 24, 2007.
[c]About 500 individual filers submitted a form 1040EZ-T but did not request TETR and 581 did not request the actual or standard amount on the respective form.
[d]For the actual as a percentage of estimated calculation, we used the midpoint of the estimated range: 20 M—estimated number of filers.
[e]Data for the week ending January 13, 2007 through the week ending March 24, 2007.

10

*Id.*

Contrary to the most elementary constitutional principles, the Government has consistently maintained that it will not disgorge the full measure of its unlawful exactions. This GAO REPORT now confirms that, even within the unlawfully limited

scope of refunds defined by the Government, the unilateral actions of the IRS do not come close to providing a reasonable or legally adequate remedy.

Resolution of the illegal FET exactions cannot begin until this Court adjudicates the Government's motion to dismiss. The Government's liability for these exactions is conceded. Should the Government's motion be denied, the parties hopefully can proceed to responsibly and cooperatively address the issues surrounding the fashioning of an appropriate remedy. Alternatively, plaintiffs believe that granting the Government's motion would unlawfully close the doors of the courthouse to this effort to redress a course of wrongful Government conduct, and, most poignantly, would do so when there is no dispute over the illegality of that conduct. Either way, the case would proceed.

The Government's motion to dismiss the Second Amended Complaint filed in the *Sloan* case has been pending since July 20, 2006. (Dkt. 29). While the intervening MDL proceedings did to some extent disrupt the progress of this matter, all of the necessary parties are now before this Court, and all case management issues have been resolved. Accordingly, Plaintiffs respectfully request the Court to set a hearing on the Government's motion to dismiss as soon as the Court's docket will allow.


DATED: April 16, 2007.                    Respectfully Submitted,

                                          By: _____
                                          Jonathan W. Cuneo, Esq. (DC Bar# 939389)
                                          Robert J. Cynkar, Esq. (DC Bar# 957845)
                                          William Anderson, Esq. (DC Bar# 502380)
                                          CUNEO GILBERT & LADUCA, LLP
                                          507 C Street, NE
                                          Washington, DC 20002
                                          Phone: 202-789-3960
                                          Fax: 202-789-1813

Nicholas E. Chimicles, Esq. (pro hac vice)
Benjamin F. Johns, Esq. (pro hac vice)
CHIMICLES & TIKELLIS LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Henry D. Levine, Esq. (DC Bar# 952770)
Stephen J. Rosen, Esq. (DC Bar# 441942)
LEVINE, BLASZAK, BLOCK AND
BOOTHBY, LLC
2001 L Street, NW, Suite 900
Washington, DC 20036

Michael Bowen
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306

R. Gaylord Smith
LEWIS BRISBOIS BISGAARD & SMITH
550 West C. Street, 8th Floor
San Diego, CA 92101

*On Behalf of Plaintiffs' Executive Committee*

United States Government Accountability Office

# GAO

Report to the Committee on Finance, U.S. Senate

April 2007

# TAX ADMINISTRATION

# Telephone Excise Tax Refund Requests Are Fewer Than Projected and Have Had Minimal Impact on IRS Services



GAO

Accountability * Integrity * Reliability

April 2007



## TAX ADMINISTRATION

# Telephone Excise Tax Refund Requests Are Fewer than Projected and Have Had Minimal Impact on IRS Services

Highlights of GAO-07-695, a report to the Committee on Finance, U.S. Senate

## Why GAO Did This Study

The Internal Revenue Service (IRS) is implementing three tax system changes during the 2007 filing season that potentially could impact compliance by taxpayers as well as IRS's service to taxpayers. These changes are (1) the telephone excise tax refund (TETR), which can be requested by all individuals and entities that paid the excise tax regardless of whether they have an obligation to file a tax return, (2) the option to deposit refunds into up to three accounts, hereafter referred to as the split refund option, and (3) the extension of some tax provisions that had expired, hereafter referred to as the extender provisions. Because the 2007 filing season may be complicated by these changes, the Committee asked GAO to determine the effects of these changes on compliance and taxpayer service including (1) the number of individuals or entities affected by these changes, (2) how the changes were expected to affect compliance and the results of compliance activities to date, and (3) the impact of the changes on returns processing and taxpayer service. GAO analyzed IRS documents and data from IRS databases and interviewed IRS officials.

### What GAO Recommends

GAO is making no recommendations in this report. IRS provided technical comments and we incorporated them as appropriate.

www.gao.gov/cgi-bin/getrpt?GAO-07-695.

To view the full product, including the scope and methodology, click on the link above. For more information, contact James White at (202) 512-9110 or whitej@gao.gov.

## What GAO Found

IRS has received fewer TETR requests and fewer taxpayers have used the split refund option than expected. IRS projected up to 181 million individuals and entities would request TETR and about 3.8 million individuals would use the split refund option. As of March 24, 2007, about two-thirds of the individual taxpayers who had filed their tax returns requested TETR and IRS had received 2 percent of the projected 10 to 30 million TETR requests from individuals without a tax filing obligation. As of March 3, 2007, about 48,000 individuals had used the split refund option. Currently, there are no data on the number of taxpayers using the extender provisions; however, IRS expects about the same number of claims as last year.

Of the three tax system changes, only TETR creates new compliance concerns for IRS and through March 25, 2007, IRS has selected over 9,900 individual and over 550 business TETR requests for audit. Four of the individual audits are completed and the individuals agreed to accept the standard amount ($30-$60) instead of the amount they originally requested. The split refund option does not create compliance concerns since it relates to where refunds are deposited rather than to compliance with tax provisions. The extender provisions could be used by taxpayers to prepare previous years' tax returns and IRS does not anticipate new compliance issues related to 2006 returns.

Early data show that the impact of the tax system changes on returns processing and taxpayer service has been minimal. IRS projected significant increases in returns processing, telephone assistance, and walk-in sites' workloads from TETR, but they have not materialized. For example, as of March 3, 2007, IRS had only received about 4.8 percent of the 6.8 million TETR calls expected. IRS's planned returns processing volume from the split refund option has not materialized and IRS did not anticipate significant workload from the extender provisions.

**Telephone Excise Tax Refund Data for Individual Returns**

| Eligible TETR filers | | Projected number of filers | Total number of filers | Number of TETR requests | Percentage[a] |
|---|---|---|---|---|---|
| Individuals | Tax return filers | 135 million | 69.1 million | 47.3 million | 68.5 percent of actual filers |
| | No tax filing obligation | 10-30 million | 334,054 | 332,963 | 1.7 percent of projected filers[b] |

Source: GAO analysis of IRS data.

[a] Week ending January 20, 2007, through week ending March 24, 2007.

[b] Based on 20 million projected filers–midpoint of estimated range.

_____ **United States Government Accountability Office**

# Contents

**Letter**                                                                    1

               Results in Brief                                         3
               Agency Comments and Our Evaluation          4

**Appendix I**              **Briefing Slides**                                6

This is a work of the U.S. government and is not subject to copyright protection in the United States. It may be reproduced and distributed in its entirety without further permission from GAO. However, because this work may contain copyrighted images or other material, permission from the copyright holder may be necessary if you wish to reproduce this material separately.



**United States Government Accountability Office**
**Washington, DC 20548**

April 11, 2007

The Honorable Max Baucus
Chairman
The Honorable Charles E. Grassley
Ranking Member
Committee on Finance
United States Senate

IRS is implementing three tax system changes during the 2007 filing season that potentially could impact compliance by taxpayers as well as IRS's service to taxpayers, such as telephone assistance. The first change is the telephone excise tax refund (TETR), which can be requested by all individuals and entities that paid the telephone excise tax, regardless of whether they have an obligation to file a tax return, making it possibly the most far-reaching refund in IRS history. The second change is giving taxpayers the option to deposit their refunds into up to three accounts, hereafter referred to as the split refund option. The third change is the December 2006 extension of some tax provisions that had expired, hereafter referred to as extender provisions.[1] The Commissioner of Internal Revenue said that these three tax system changes make the Internal Revenue Service's (IRS) 2007 filing season a "high" risk filing season.

Because the 2007 filing season may be complicated by these three tax system changes, you asked us to determine the effects of these changes on compliance and taxpayer service. Our objectives were to

- determine, based on available data, the number of individuals and entities affected by the tax system changes related to the TETR, split refund option, and extender provisions;
- determine how the tax system changes were expected to affect compliance;
- assess IRS's plans for ensuring compliance with those tax system changes that created new compliance concerns for IRS;

---

[1]The extender provisions were included in the Tax Relief and Health Care Act of 2006 which was signed into law in December 2006 (Pub. L. No. 109-432, Dec. 20, 2006). The provisions primarily involve three tax deductions related to state and local sales taxes, higher education tuition and fees, and educator expenses.

- summarize the results of compliance activities to date for those tax system changes that created new compliance concerns for IRS; and
- summarize the impact of the TETR, split refund option, and extender provisions on returns processing and taxpayer service.

To determine (1) the number of taxpayers affected by the tax system changes related to the TETR, split refund option, and extender provisions, (2) how the tax system changes were expected to affect compliance, (3) the results of compliance activities for the tax system changes that created new compliance concerns for IRS, and (4) the impact of the tax system changes on returns processing and taxpayer service, we analyzed IRS documents and data from IRS databases and interviewed IRS officials. In past work, we assessed IRS's filing season performance data. We considered filing season performance data on the number of individual and business returns processed and related compliance activities to be objective and reliable based on our prior work. Since the data sources and procedures for producing this year's filing season data have not significantly changed from prior years, we determined that the data were sufficiently reliable for the purposes of this report. Officials interviewed included, among others, the Commissioner of the Wage and Investment Division, the Executive-in-Charge of TETR, and the Director of Submission Processing. To assess IRS's plans for ensuring compliance with TETR, the only one of the three tax system changes that created new compliance concerns for IRS, we compared good management practices identified in our previous reports to IRS's plans for ensuring compliance with TETR.[2]

We conducted our work from January 2007 through April 2007 in accordance with generally accepted government auditing standards. On March 14, 2007, we briefed your staff on the results of our work. This report conveys the information provided during that briefing. A copy of the briefing document is included in appendix I with information updated through March 24, 2007.

---

[2]The GAO reports included a wide range of management practices. We compared those practices that related to the development of IRS's plans for ensuring compliance with TETR. See GAO, *Results-Oriented Government: Practices That Can Help Enhance and Sustain Collaboration among Federal Agencies*, GAO-06-15 (Washington, D.C.: Oct. 21, 2005), *Managing For Results: Enhancing Agency Use of Performance Information for Management Decision Making*, GAO-05-927 (Washington, D.C.: Sept. 9, 2005), and *Homeland Security: Better Management Practices Could Enhance DHS's Ability to Allocate Investigative Resources*, GAO-06-462T (Washington, D.C.: Mar. 28, 2006).

**Results in Brief**

IRS has received fewer TETR requests and fewer taxpayers have used the split refund option than expected. IRS projected that up to 181 million individuals and entities would request TETR and about 3.8 million individual taxpayers would use the split refund option. As of March 24, 2007, two-thirds of the individual taxpayers who had filed their tax returns requested TETR and IRS had received 2 percent of the projected requests for TETR from individuals who did not have a tax filing obligation. Also, as of March 3, 2007, about 48,000 taxpayers of the approximately 36 million taxpayers that had their refunds direct deposited had taken advantage of the split refund option. According to IRS officials, the late passage of the extender provisions delayed the processing of tax returns from individuals claiming the extender provisions until February 3, 2007. There are no data currently available on the number of taxpayers affected by the extender provisions, but IRS expects the volume to be similar to the number of claims made last year.

TETR is the only one of the three tax system changes expected to create new compliance concerns for IRS. TETR is new in 2007 and filers may request refunds greater than that to which they are entitled. The split refund option does not create compliance concerns for IRS since it relates to the accounts into which taxpayers want their refunds deposited rather than to complying with tax provisions.[3] The extender provisions could be used by taxpayers when preparing previous years' returns and IRS anticipates that any compliance concerns for 2006 returns will be the same as for previous years' returns.

IRS compliance plans for TETR were consistent with good management practices identified in our previous reports. Examples of good management practices we identified include identifying leader(s), developing a compliance plan, and monitoring compliance efforts. IRS's compliance plans for TETR included, among other things, appointing an executive to coordinate TETR plans IRS-wide, developing a compliance plan to select TETR requests for audit based on the probability that the amounts of the requests were statistically unlikely based on an analysis of telephone industry data, and monitoring compliance efforts weekly by comparing the number of TETR requests identified as potentially

---

[3] While there are no compliance concerns, there is a potential for errors due to taxpayers entering incorrect account numbers on Form 8888 (Direct Deposit of Refund to More Than One Account) or IRS incorrectly transcribing the account numbers or the dollar amounts to be deposited into each account.

erroneous to the available audit resources in order to maximize the number of TETR audits.

As of March 25, 2007, IRS had selected for audit over 9,900 individual returns and over 550 business returns that requested TETR and froze the TETR refunds. So far, IRS has closed four of the individual audits with taxpayers agreeing to accept the standard amount, and has not completed the remaining individual audits or any of the business audits. IRS reassigned about 77 full-time equivalent (FTE) staff from discretionary and earned income tax credit audits to conduct the TETR audits.

Early data show that the impact of TETR, the split refund option, and extender provisions on returns processing and taxpayer service operations has been minimal. Although IRS projected increases in workload for returns processing, telephone assistance, and walk-in site contacts from TETR, the workload IRS planned to receive has not materialized. For example, as of March 3, 2007, IRS had only received 4.8 percent of the 6.8 million TETR calls expected. Similarly, IRS's planned workload from the split refund option for returns processing has not materialized. IRS did not anticipate and has not experienced significant workload from extender provisions.

## Agency Comments and Our Evaluation

We provided a draft of this report to the Commissioner of Internal Revenue for his review and comment. The IRS provided informal technical comments, and we incorporated them as appropriate.

As agreed with your offices, unless you publicly announce its contents earlier, we plan no further distribution of this report until 30 days from its issue date. At that time, we will send copies to the Chairman and Ranking Minority Member, House Committee on Ways and Means; the Secretary of the Treasury; the Commissioner of Internal Revenue; and other interested parties. We will also make copies available to others upon request. In addition, this report will be available at no charge on the GAO Web site at http://www.gao.gov.

If you or your staffs have any questions, please contact me at (202) 512-9110 or at whitej@gao.gov. Contact points for our Offices of Congressional Relations and Public Affairs may be found on the last page of this report. Key contributors to this report were Amy Dingler, Evan Gilman, Shirley Jones, Matt Kalmuk, Frederick Lyles, Signora May, Jennifer McDonald, Neil Pinney, Lerone Reid, Shellee Soliday, and Joanna Stamatiades.

James R. White

James R. White
Director, Tax Issues
Strategic Issues

# Appendix I: Briefing Slides



## 2007 Filing Season Compliance

Update of March 14, 2007 Briefing to the
Senate Committee on Finance

1



# Briefing Contents

- Objectives

- Scope and Methodology

- Background

- Results

2



# Objectives

GAO was asked to:

1.  determine, based on available data, the number of individuals and entities affected by the tax system changes related to the telephone excise tax refund (TETR), split refund option, and extender provisions,

2.  determine how the tax system changes were expected to affect compliance,

3.  assess IRS's plans for ensuring compliance for those tax system changes that created new compliance concerns for IRS,

4.  summarize the results of compliance activities to date for those tax system changes that created new compliance concerns for IRS, and

5.  summarize the impact of the TETR, split refund option, and extender provisions on returns processing and taxpayer service.

3



# Scope and Methodology

- Analyzed IRS documents and data from various IRS databases related to compliance, returns processing, and taxpayer services for the three tax system changes.

- Compared good management practices identified in previous GAO reports to IRS's plans for ensuring compliance with TETR.[1]

- Interviewed IRS officials with responsibilities for compliance, returns processing, and taxpayer services related to the TETR, split refund option, and extender provisions.

[1]The GAO reports included a wide range of management practices. We compared those practices that related to the development of IRS's plans for ensuring compliance with TETR. For additional information, see the GAO reports listed on page 28.

4



# Data Reliability

- We considered filing season performance data on the number of individual and business returns processed and related compliance activities to be objective and reliable based on our prior work.  Since the data sources and procedures for producing this year's filing season data have not significantly changed from prior years, we determined that the data were sufficiently reliable for the purposes of this report.

5



# Background

## TETR

- The federal telephone excise tax was first imposed in 1898 to fund the Spanish-American War. According to the tax code, the tax is to be paid on telephone charges that are based on distance and elapsed time. Some individuals and corporations challenged the collection of the tax on long-distance services since these charges are based only on elapsed time. After five circuit court losses, on May 25, 2006, the Department of the Treasury conceded the legal dispute over the federal excise tax on long-distance telephone service.  As a result, IRS will issue refunds of excise tax paid (including interest) on long-distance service after February 28, 2003 and before August 1, 2006.

- Anyone who paid the excise tax during this period may request TETR when filing their income tax returns including individuals, businesses, tax-exempt organizations, and government entities. Individuals who do not normally file tax returns but paid the tax can request the refund on Form 1040EZ-T (Request for Refund of Federal Telephone Excise Tax).

6



# Background (continued)

- Individuals can request a standard amount when filing their income tax return, ranging from $30 to $60 depending on the number of exemptions they are eligible to claim, or they can use Form 8913 (Credit for Federal Telephone Excise Tax Paid) to request the actual amount paid.

- Businesses, tax-exempt organizations, and government entities can request the actual amount paid or use a formula developed by IRS to estimate their actual costs. They must file Form 8913 for either method.

- Taxpayers have 3 years to file an amended return to request TETR.  Individuals who have no tax filing obligation have 3 years to file a 1040 EZ-T without filing an extension.

7



# Background (continued)

**Split Refund Option and Extender Provisions**

- Prior to 2007, taxpayers could have their tax refund directly deposited into one account. Beginning in 2007, to promote savings, taxpayers are allowed to deposit their refunds into up to three accounts with U.S. financial institutions.

- The Tax Relief and Health Care Act of 2006 signed into law in December 2006 extended some provisions that expired at the end of calendar year 2005. These changes primarily involve three tax deductions:

  (1) state and local sales tax,

  (2) higher education tuition and fees, and

  (3) educator expenses.

8



# Number of Individuals and Entities Affected by Tax System Changes

As of March 24, 2007:

- About two-thirds of individual tax filers requested TETR.

- For individuals without a tax filing obligation, IRS has received about 2 percent of the projected number of TETR requests.

9



# Number of Individuals and Entities Affected by Tax System Changes

TETR could be the most far-reaching refund in IRS history—a projected 159 to 181 million (M) individuals and entities may request the refund

| | Eligible TETR filers | Projected number of filers | Total number of filers to date | Number of TETR requests | Percentage |
|---|---|---|---|---|---|
| Individuals[b] | Tax return filers[a] | 135 M | 69.1 M | 47.3 M | 68.5 percent of actual filers |
| | Individuals without a tax filing obligation | 10-30 M | 334,054 | 332,963[c] | 1.7 percent[d] of projected filers |
| Entities[e] | Businesses (C-Corporations, S-Corporations, and partnerships) | 11 M | Not available | 189,510 | 1.7 percent of projected filers |
| | Tax-exempt filers | 1.3 M | Not available | 280 | 0.0 percent of projected filers |
| | State, local government, and other non-filers | 2-4 M | Not available | Not available | Not available |
| | Total | 159 – 181 M | Not available | Not available | Not available |

Source: GAO analysis of IRS data.
[a]Includes 1040 series forms: 1040, 1040A, 1040EZ, and 1040NR.
[b]Data for the week ending January 20, 2007 through the week ending March 24, 2007.
[c]About 500 individual filers submitted a form 1040EZ-T but did not request TETR and 591 did not request the actual or standard amount on the respective form.
[d]For the actual as a percentage of estimated calculation, we used the midpoint of the estimated range: 20 M—estimated number of filers.
[e]Data for the week ending January 13, 2007 through the week ending March 24, 2007.

10

Appendix I: Briefing Slides



## Number of Individuals and Entities Affected by Tax System Changes

Individual tax returns requesting TETR averaged 4.7 million per week.  Individual tax returns not requesting TETR averaged 2.2 million



Source:  GAO analysis of IRS data.

11



## Number of Individuals and Entities Affected by Tax System Changes

About 48,000 taxpayers have used the split refund option—through early March 2007

Split refund option

- IRS issued 57 million direct deposit refunds (from 136 million tax returns) as of December 15, 2006.  The direct deposit refunds totaled $149 billion.

- As of March 2, 2007, taxpayers chose to have about 36 million 2007 refunds totaling $101.5 billion directly deposited, which is an 8.7 percent increase over the same period last year.  While most taxpayers are electing to use just one account, as of March 3, 2007, about 48,000 taxpayers (.13 percent) have taken advantage of the new split refund option which allows them to use up to 3 accounts.

12



# Number of Individuals and Entities Affected by Tax System Changes

Data not available for extender provisions

Extender provisions

- In 2006, about 11.2 million taxpayers claimed state and local sales taxes, about 4.7 million claimed higher education tuition and fees, and about 3.5 million claimed educator expenses.

- IRS expects a similar number of claims for each of the three deductions in 2007.

- The act including the extender provisions was signed into law in December 2006. This delayed the processing of returns claiming the provisions until February 3, 2007.  No data are currently available on the number of taxpayers affected.

13



# How Tax Changes Expected to Affect Compliance

TETR is the only tax change expected to create new compliance concerns for IRS

- TETR creates new compliance concerns for IRS.  It is a new provision in 2007 and those filers requesting the actual amount may request a refund greater than the amount of TETR they actually paid.  Individuals who request the standard amount will generally not be selected for audit while individuals and entities who request the actual amount of telephone excise tax paid may be selected for audit.

- The split refund option does not create compliance concerns for IRS.  It relates to the accounts into which taxpayers want their refunds deposited rather than to complying with tax provisions. While there are no compliance concerns, there is a potential for errors due to taxpayers entering incorrect account numbers on Form 8888 (Direct Deposit of Refund to More Than One Account) or IRS incorrectly transcribing the account numbers or the dollar amounts to be deposited into each account.

- The extender provisions do not create new compliance concerns for IRS.  Taxpayers could use these provisions to prepare previous years' tax returns and IRS does not anticipate new compliance issues related to 2006 returns.  Also, the late passage of these provisions did not create compliance concerns that did not previously exist.

14

Appendix I: Briefing Slides



## IRS Plans for Ensuring Compliance for Tax Changes That Created New Compliance Concerns

IRS's TETR compliance plans consistent with good management practices identified by GAO

## IRS's plans included

• appointing an executive to coordinate TETR plans IRS-wide,

• collaborating across operating divisions and offices on designing TETR processes, and

• developing a TETR implementation plan that included:

1. standard amounts that individuals could request based on a model that assessed the risks of how different standard amounts would affect the number of filers that would request the actual amount of telephone excise tax paid rather than the standard amounts and the related effect this would have on the overall cost of TETR to the government.

2. a methodology that businesses and tax exempt and government entities could use to estimate their TETR.

15



**IRS Plans for Ensuring Compliance for Tax Changes That Created New Compliance Concerns (continued)**

IRS's TETR compliance plans consistent with good management practices identified by GAO

## IRS's plans included (continued)

• developing a compliance plan to select TETR requests for audit based on the probability that the amounts of the requests were statistically unlikely based on an analysis of telephone industry data, and

• monitoring compliance efforts weekly by comparing the number of TETR requests identified as potentially erroneous to the available audit resources in order to maximize the number of TETR audits.

16



## Results of Compliance Activities for Tax Changes That Created New Compliance Concerns for IRS

### IRS developed plan for TETR audits

Operating divisions

*   IRS reassigned about 77 full-time equivalent (FTE) staff from discretionary and earned income tax credit audits to conduct the TETR audits.

*   Only the TETR portion of a refund is frozen.  The TETR refund will stay frozen until the audit is completed.  The amount of time this takes depends in part on how long it takes the person or entity requesting the refund to respond to IRS requests for documentation.

*   IRS officials are confident, based on meetings held to discuss resources, that they will be able to complete audits of all the TETR requests selected for audit.

Criminal Investigations

*   Criminal Investigation has spent 13 FTEs on TETR activities in fiscal year 2007.

17

Appendix I: Briefing Slides



## Results of Compliance Activities for Tax Changes That Created New Compliance Concerns for IRS

TETR audit data for individual returns[a]

| Data summary | Telephone excise tax refund requests[b] | | |
|---|---|---|---|
| | Standard amount | Requested actual | Total |
| Total dollar amount requested | $2 billion | $98.8 million | $2.01 billion |
| Total number of returns | 47.4 million | 211,247 | 47.6 million |
| Total dollar amount: selected for audit and refunds frozen | None | $29.6 million | $29.6 million |
| Total number of returns selected for audit and refunds frozen[c] | None | 9,914 | 9,914 |
| Audit disposition | None | Four (4) audits closed. All agreed to accept the standard amount. | Four (4) audits closed. All agreed to accept the standard amount. |

Source: GAO analysis of IRS data.
[a]Data for the week ending January 20, 2007 through the week ending March 24, 2007.
[b]Includes all 1040 Series and 1040 EZ-Ts.
[c]Data for the week ending January 20, 2007 through the week ending March 25, 2007.

18



## Individual Returns That Requested Standard Amount Represent About 95 Percent ($2 Billion) of the Total Requested TETR Amount[a]



[a]Data for the week ending January 20, 2007 through the week ending March 24, 2007.

Source:  GAO analysis of IRS data.

19



## Results of Compliance Activities for Tax Changes That Created New Compliance Concerns for IRS

TETR audit data for businesses and tax exempt and government entities[a]

| Data summary | |
| --- | --- |
| Total dollar amount requested | $74.7 million |
| Total number of returns | 189,790 |
| Total dollar amount: selected for audit and frozen[b] | $5.6 million |
| Total number of returns selected for audit and refunds frozen | 561 |
| Audit disposition | No audits closed |

Source: GAO analysis of IRS data.
[a]Data for the week ending January 13, 2007 through the week ending March 25, 2007.
[b]Includes the telephone excise tax refund plus interest.

20



# TIGTA—Ongoing TETR Audit

• TIGTA began reviewing the TETR program in late 2006. The review is being conducted in two phases. TIGTA plans to send a draft report covering both phases to IRS for comment in July 2007.

**Phase I:**   (1)   Assess IRS's preparation for handling TETR including the development of forms and instructions and interaction with taxpayers, including outreach efforts.

(2)   Assess how IRS developed the standard amount and the reasonableness of the amount.

(3)   Assess the controls IRS plans to use to ensure taxpayer compliance. TIGTA will also identify the requests for information and strategies implemented.

**Phase II:**   Determine whether IRS is following its TETR plans and monitor returns being filed for potential processing problems or trends regarding questionable TETR requests.

21



# Impact of TETR and the Split Refund Option on Returns Processing and Taxpayer Service Has Been Minimal

- IRS anticipated increases in the returns processing workload due to TETR and the split refund option, but the expected volume has not materialized.

    - IRS expected to receive 10-30 million Forms 1040EZ-T, but as of March 24, 2007, had only received about 335,000.

    - IRS anticipated processing 3.8 million split refund requests; however as of March 24, 2007, only 61,000 taxpayers have used the split refund option.

22



# Impact of TETR and the Split Refund Option on Returns Processing and Taxpayer Service Has Been Minimal

- Both IRS's new tax returns processing system and its legacy system are able to process TETR requests made on 1040 forms and 1040EZ-T forms. However the new system, the Customer Account Data Engine (CADE) system, just became operational March—2 months behind schedule because of problems identified during testing.

  - IRS had originally planned to post 33 million taxpayer accounts to CADE, but as a result of the delay, now will post about 17-19 million accounts to that system. Thus, returns processing has been slowed for millions of taxpayers who would have been eligible for their accounts to be posted on CADE, because of the longer posting times for the legacy system versus CADE. Refunds for millions of those CADE-eligible taxpayers were delayed by 1-5 days for direct deposit and 4-8 days for paper checks.

  - IRS did not plan to process split refund returns on CADE this year because of IRS's concerns about including it in the programming for the current release of CADE given the timing of the legislation.

23



## Impact of TETR and the Split Refund Option on Returns Processing and Taxpayer Service Has Been Minimal

- While all 19 companies participating in the Free File program—which offers free return preparation to taxpayers with an average gross income of $52,000 or less, equating to 95 million taxpayers (70 percent of all taxpayers)—allow for TETR requests, 3 offer TETR requests via Form 1040EZ-T.  As of February 22, 2007, about 2 million returns (7.9 percent down from last year) were filed via free file, with just under half requesting TETR.

24



# Impact of TETR and the Split Refund Option on Returns Processing and Taxpayer Service Has Been Minimal

- IRS anticipated increases in its taxpayer service operations (face-to-face and telephone assistance) due to TETR.  However, TETR has had minimal impact on those operations because the volume of TETR requests IRS planned to receive has not materialized.

**For face-to-face taxpayer assistance:**

- Walk-in: As of March 10, of the approximately 1.8 million taxpayer contacts, IRS has prepared about 6,700 1040EZ-T forms, 5.3 percent of the approximate 126,000 forms it projected it would prepare in TETR requests.

- Volunteer sites: As of March 11, IRS reported that over 1.3 million returns had been prepared at volunteer sites including over 33,000 1040EZ-T forms. IRS did not develop TETR projections for volunteer sites.

25



# Impact of TETR and the Split Refund Option on Returns Processing and Taxpayer Service Has Been Minimal

**For telephone assistance:**

- TETR-related calls are a fraction of what IRS projected.

- By March 3, 2007, IRS had planned to receive over 20.5 million telephone calls for live and automated assistance. Of the almost 18.5 million calls received through that date, IRS received over 326,000 calls for assistance with TETR. This represents 1.8 percent of all calls for assistance and 4.8 percent of the 6.8 million TETR calls IRS expected to receive during the filing season.

- IRS hired 650 FTEs in fiscal year 2007, with the expectation that those hires would be used to cover anticipated attrition in 2008. Their first assignment was answering TETR telephone calls. They were also trained to handle other accounts calls should the demand for TETR assistance not materialize.

- Because TETR call volume has not materialized, staff assigned to work TETR cases are being used to work other account calls so that more experienced staff can process paper correspondence, such as amended returns, at call sites.

26



# Impact of TETR and the Split Refund Option on Returns Processing and Taxpayer Service Has Been Minimal

- IRS anticipated handling 7,000 split refund telephone calls (compared to the 70 million total calls it receives each year).

- IRS did not expect filing season service to be impacted by the extender provisions.

27



# Selected GAO Reports on Management Practices

- *Results-Oriented Government: Practices That Can Help Enhance and Sustain Collaboration among Federal Agencies.* GAO-06-15. Washington, D.C.: October 21, 2005. (Practices identified: identify a leader, collaborate across operational lines, develop implementation and compliance plans, and monitor and evaluate results in real time in order to make timely changes.)

- *Managing For Results: Enhancing Agency Use of Performance Information for Management Decision Making.* GAO-05-927. Washington, D.C.: September 9, 2005. (Practice identified: monitor and evaluate results in real time in order to make timely changes.)

- *Homeland Security: Better Management Practices Could Enhance DHS's Ability to Allocate Investigative Resources.* GAO-06-462T. Washington, D.C.: March 28, 2006. (Practice identified: assess risks.)

28

## GAO's Mission

The Government Accountability Office, the audit, evaluation and investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability.

## Obtaining Copies of GAO Reports and Testimony

The fastest and easiest way to obtain copies of GAO documents at no cost is through GAO's Web site (www.gao.gov). Each weekday, GAO posts newly released reports, testimony, and correspondence on its Web site. To have GAO e-mail you a list of newly posted products every afternoon, go to www.gao.gov and select "Subscribe to Updates."

## Order by Mail or Phone

The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to:

U.S. Government Accountability Office
441 G Street NW, Room LM
Washington, D.C. 20548

To order by Phone:  Voice:  (202) 512-6000
TDD:  (202) 512-2537
Fax:  (202) 512-6061

## To Report Fraud, Waste, and Abuse in Federal Programs

Contact:

Web site: www.gao.gov/fraudnet/fraudnet.htm
E-mail: fraudnet@gao.gov
Automated answering system: (800) 424-5454 or (202) 512-7470

## Congressional Relations

Gloria Jarmon, Managing Director, JarmonG@gao.gov (202) 512-4400
U.S. Government Accountability Office, 441 G Street NW, Room 7125
Washington, D.C. 20548

## Public Affairs

Paul Anderson, Managing Director, AndersonP1@gao.gov (202) 512-4800
U.S. Government Accountability Office, 441 G Street NW, Room 7149
Washington, D.C. 20548